1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| RAUL. V., | Case No.:  20-cv-2014-BGS |
| Plaintiff, | **ORDER ON JOINT MOTION FOR JUDICIAL REVIEW** |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | [ECF 19] |
| Defendant. | |

## I.      INTRODUCTION

Plaintiff Raul V. ("Plaintiff") filed a Complaint seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner" or "Defendant") denial of disability insurance benefits under the Social Security Act, (ECF 1), and the Commissioner has filed the Administrative Record. (ECF 15.)

Pursuant to the Court's Order, the parties have filed a Joint Motion for Judicial Review. (ECF 16 (Court's briefing Order); ECF 19 (Joint Motion).) Plaintiff seeks

_____

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021 and is therefore substituted for Andrew Saul as Defendant. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

reversal of the final decision denying benefits and an order for the payment of benefits or, in the alternative that the Court remand the case for further administrative proceedings. (ECF 19 at 5-19, 26-39, 53 (Plaintiff's positions); ECF 19 at 19-26, 39-54 (Defendant's positions).) Plaintiff argues the Administrative Law Judge ("ALJ") erred in rejecting Plaintiff's symptom testimony. (*Id.* at 5-19.) Plaintiff also argues the case must be remanded for a new hearing because the final decision of the Commissioner arose from an unconstitutional administrative process. (*Id.* at 26-39.) Defendant argues that the ALJ's decision provided valid reasons for discounting Plaintiff's subjective complaints and Plaintiff's separation of powers argument related to the appointment of the Commissioner and ALJ does not entitled him to a rehearing of his claim. (*Id.* at 19-26, 39-54.)

After careful consideration of the parties' arguments, the administrative record and the applicable law and for the reasons discussed below, the Court finds Plaintiff is entitled to summary judgment and remand of the case to the Social Security Administration for further administrative proceedings.

## II.   PROCEDURAL HISTORY

The following procedural history is drawn largely from the parties' joint summary of the procedural history of the case. (ECF 19 at 2.) Plaintiff's application for disability benefits was filed on February 20, 2018, alleging disability commencing on March 3, 2015. (AR 151-153.) The claim was denied initially on July 13, 2018 and denied on reconsideration on September 26, 2018. (AR 89-94.) At Plaintiff's request, a hearing was held before an ALJ on October 23, 2019. (AR 13-42 (hearing transcript), 96-97 (request for hearing), 114-136 (notices related to hearing).) The ALJ issued an unfavorable decision on November 26, 2019. (AR 67-84.) Plaintiff sought and obtained Appeals Council review. (AR 143-150.) On August 24, 2020, the Appeals Council issued an unfavorable decision. (AR 1-9.)

### III.   APPEALS COUNCIL / ALJ DECISION

The Appeals Council adopted the ALJ's decision that Plaintiff was not disabled and found Plaintiff was not disabled for the period of January 1, 2018 to December 2, 2019.[2] (AR 4-7.)[3] The parties provided a joint summary of the decision and the application of the five-step sequential evaluation process. (ECF 19 at 3-4.) The Court addresses relevant portions of the ALJ decision below in more detail but notes here that at step two the ALJ found Plaintiff had the following medically determinable severe impairments: "degenerative disc disease of the lumbar spine; retrolisthesis; lumbar radiculopathy; chronic pain disorder; right-sided sciatica; bipolar mood disorder; generalized anxiety disorder; major depressive disorder; panic disorder; and post-traumatic stress disorder ("PTSD"))." (AR 73; AR 6.) The ALJ found Plaintiff did not meet a listing at step three. (AR 74, AR 6.) The ALJ then assessed the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except the claimant is limited to occasional climbing of ramps/stairs, occasional climbing of ladders/ropes/scaffolds, and occasional balancing, stooping, kneeling, crouching and crawling. In addition, the claimant is limited to understanding, remembering, and carrying out simple, routine tasks, only occasional interaction with the general public, only occasional work-related, non-personal, non-social interaction with coworkers and supervisors, and can perform jobs requiring only simple work-related decisions.

(AR 6, 76.)

The ALJ determined at step four that Plaintiff could not do his past relevant work as tune up mechanic or that kind of work. (AR 6, 79-80.) At step five, the

---

[2] Plaintiff initially claimed an onset date of March 3, 2015, but amended his onset date to January 1, 2018 at his hearing before the ALJ. (AR 40 (hearing transcript); AR 4 (Appeals Council Decision noting change).)

[3] The Court references this final decision as the ALJ decision throughout.

ALJ found Plaintiff retained the residual functional capacity to perform the work of marker, assembler, and housekeeper cleaner and denied disability benefits. (AR 6-7, 80-81.)

## IV.   DISCUSSION

The parties' raise the following two issues: (1) whether the ALJ erred in rejecting Plaintiff's testimony regarding his symptoms; and (2) whether the final decision arises from an unconstitutional administrative process that requires remand for a new hearing. (ECF 19.) For the reasons discussed below, the Court finds the ALJ erred in his consideration of Plaintiff's symptom testimony and remand is required on this basis. Additionally, although the Court need not reach the second issue because the case is already being remanded, the Court finds Plaintiff would not be entitled to a new hearing based on the administrative process. The Court first addresses the ALJ's treatment of Plaintiff's testimony regarding his symptoms.

### A.   Plaintiff's Symptom Testimony

#### 1.   Parties' Positions

Plaintiff argues the ALJ failed to provide any rationale for rejecting Plaintiff's symptom testimony. (ECF 19 at 8-9.) In particular, Plaintiff asserts that the ALJ erred in providing only a routine and conclusory statement vaguely concluding Plaintiff's allegations regarding the severity of his symptoms were not consistent with the objective evidence. (*Id.* at 9-10.) Plaintiff argues this was deficient because an ALJ is not permitted to reject subjective pain testimony solely on the basis of objective medical evidence, and the objective medical evidence supports the severity of his symptoms. (*Id.* at 9-13.) Additionally, Plaintiff asserts that the decision lacks any connection between any portion of Plaintiff's testimony and portions of the record supporting the ALJ's decision to reject the testimony. (*Id.* at 10-12.) Plaintiff also argues the ALJ erred in relying on Plaintiff's activities of daily living to reject Plaintiff's testimony because the sporadic activities described do not contradict his testimony or demonstrate he can spend a substantial part of the day doing activities transferable to a full-time work setting. (*Id.* at 13-18.)

Defendant counters that the ALJ properly evaluated Plaintiff's subjective complaints and found "them inconsistent with the objective medical evidence, Plaintiff's treatment history, and his admitted activities, including part-time work." (*Id.* at 19.) Defendant relies on the ALJ's finding that Plaintiff's allegations were not entirely consistent with the medical evidence and notes examples where the ALJ identified medical examinations showing normal findings and improvement. (*Id.* at 21-22.) Defendant argues the ALJ's summaries of Plaintiff's testimony as to his back pain and mental health symptoms followed by discussion of examination records showing normal findings are sufficiently specific to allow the Court to conclude Plaintiff's testimony was not arbitrarily discredited. (*Id.* at 22-25.) Defendant also argues the ALJ did not err in consideration of Plaintiff's daily activities in discrediting his testimony regarding disabling back pain and anxiety. (*Id.* at 24-26.)

## 2.    Applicable Legal Standard

The ALJ must engage in "a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) ("We have established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited."); *Garrison v. Colvin*, 759 F.3d 995, 1014 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)); 20 C.F.R. § 404.1529 (Describing how the Commissioner evaluates symptoms, including pain); *see also* SSR 16-3p, 2017 WL 5180304, at *2-3 (Detailing the Commissioner's two-step process for evaluating symptoms).

At the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison*, 871 F.3d at 678.

When, as here, the claimant satisfies the first step and there is no determination of malingering by the ALJ, "the ALJ must provide 'specific, clear, and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's

symptoms."[4] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); *Smith v. Kijakazi*, 14 F.4th 1108, 1112 (9th Cir. 2021); *Garrison*, 759 F.3d at 1014-15; *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (citations omitted). The Ninth Circuit "require[s] the ALJ to 'specifically identify the testimony from a claimant [the ALJ] finds not to be credible and . . . explain what evidence undermines this testimony." *Treichler*, 775 F.3d at 1102; *Lambert v. Saul*, 980 F.3d 1266, 1268 (9th Cir. 2020) ("[T]he ALJ must identify the specific testimony that he discredited and explain the evidence undermining it."); *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); *Parra*, 481 F.3d at 750 ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints."). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

"If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'" *Tommasetti*, 533 F.3d at 1039 (quoting *Thomas v Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1038. "The 'evidence must be more than a mere scintilla but not necessarily a preponderance.'" *Id.* (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)).

In assessing a claimant's characterization of their symptoms, the "ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities,

---

[4] Plaintiff accurately indicates, and Defendant does not dispute, that the ALJ found that Plaintiff satisfied the first step. (AR 77 ("the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms").)

work record" and "testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which he complains." *Bray v. Comm'n of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citations omitted); 20 C.F.R. § 404.1529; SSR 16-3p at *6-8.[5]

### 3.   Analysis

#### a)   Objective Medical Evidence

Plaintiff argues that at no point did the ALJ identify specific testimony from Plaintiff that was undermined by Plaintiff's treatment history. (ECF 19 at 11.) Plaintiff claims that the ALJ did not connect any of Plaintiff's testimony regarding his symptoms to his analysis. (*Id.* at 10-11.) Defendant refutes, citing the decision's comparison between the ALJ's summary of Plaintiff's allegations regarding pain and mental health symptoms and the objective findings in the record. (*Id.* at 22.)

The ALJ first summarized Plaintiff's testimony:

> At the hearing, the claimant testified that he currently works part-time doing automotive and handyman work. The claimant testified he has low back pain which causes leg numbness. He has received epidural injections. He has pain with bending and difficulty putting on his shoes. As for his activities of daily living, the claimant can help clean up his home. He also uses a computer to sell things on eBay. The claimant estimates he can lift and/or carry 25-25 pounds, stand for 20 minutes at a time and sit for 30 minutes at a time. As

---

[5] The Court notes that some cases articulating the analysis under the second step use the term credibility, and SSR 16-3p explicitly removed the term "credibility" from the Commissioner's sub-regulatory policy. However, the Ninth Circuit has explained that SSR 16-3p "makes clear what our precedent already require: the assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo*, 871 F.3d at 678 n.5 (quoting SSR 16-3p). Regardless of the use of the term credibility, the Court's application of Ninth Circuit authority here is consistent with *Trevizo's* explanation of credibility and SSR 16-3p.

for his mental impairments, the claimant complains of anxiety and not
wanting to be around people. He has seen a mental health provider one a
month for the past seven months.

(AR 77)[6]

After this summary of Plaintiff's testimony, the ALJ indicated Plaintiff's back pain
"resulted in functional limitations, however, it is not disabling" and as to mental
impairments the ALJ found they "cause functional limitations; however, they are not
disabling." (AR 77-78.) The Court finds that by referencing Plaintiff's back pain and
mental impairments immediately following his summary of Plaintiff's testimony
regarding the same, the ALJ was referring to the back pain and mental impairments
identified in his summary of Plaintiff's testimony. Therefore, the ALJ did sufficiently
identify the testimony from Plaintiff that he goes on to evaluate.

Plaintiff argues that "[b]eyond the conclusory statement that the objective evidence
does not support the testimony, the ALJ nowhere connects any of [Plaintiff's] testimony
to the ALJ's analysis." (ECF 19 at 10.) The Court disagrees. As noted above, the ALJ did
identify Plaintiff's testimony as to low back pain causing leg numbness, having epidural
injections, his pain with bending, and difficulty putting on his shoes. (AR 77.) The ALJ
then cites to medical records to support his decision to discredit this testimony:

> However, the claimant's back pain shows stability and control with
> treatment. On March 27, 2017, the claimant noted improvement since the
> steroidal injection (Exh. 2F, at pg. 147). The claimant also noted continuous
> improvement with medication (Exh. 1F, at pgs. 9, 49, 71, 83, etc.). *On May
> 8, 2018, Dr. Sabourin noted decreased lumbar range of motion, but normal
> gait, reflexes, motor strength, and sensation (Exh. 3F). Electromyography
> ("EMG") studies of the bilateral lower extremities on October 30, 2018,
> were also normal (Exh. 6F, at pg. 1).* On November 6, 2018, the claimant
> reported improvement with chiropractic care and physical therapy (Exhs. 4F,

---

[6] As discussed in more detail below, (*see* IV.A.2.c)) the ALJ mischaracterizes Plaintiff's
testimony regarding his daily activities. The inclusion of that portion of the ALJ decision
here is not intended to suggest it is accurate.

at pg. 14; 6F, at pg. 1). The claimant also reported improvement using an inversion table (Exh. 6F, at pg. 1).

(AR 77-78 (emphasis added).)

The Court finds that the ALJ did not make a conclusory statement lacking connection to Plaintiff's testimony. Rather, the ALJ supported his conclusion regarding Plaintiff's testimony with objective medical evidence. The ALJ cites medical records showing normal gait, reflexes, motor strength, and sensation in an orthopedic surgeon's report evaluating Plaintiff's back pain. (AR 77 (citing AR 482-489 [Ex 3F]).) The ALJ also relies on an EMG study that was normal. (AR 77 (citing AR 562 [Ex 6F at 1]).) The The ALJ identified the testimony at issue, explained Plaintiff's back pain was stable and controlled with treatment, and then identified the medical records showing normal objective findings that supported that reasoning. Although the normal objective findings are not numerous, the decision sufficiently connected the identified testimony regarding his back pain to medical records he relied on to find Plaintiff's back pain was not as disabling as Plaintiff alleged.[7] This was sufficient. *See Thomas*, 278 F.3d at 958 (ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."); *see also Lambert*, 980 F.3d at 1277 ("Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits.") (citing *Treichler*, 775 F.3d at 1103).

---

[7] As regards the ALJ's analysis of Plaintiff's mental impairment, Plaintiff makes no specific objection. Notwithstanding, the Court similarly finds that the ALJ connected his summary of Plaintiff's testimony regarding his mental impairments to objective relevant evidence. (*See* AR at 78 (discussing lack of psychomotor retardation, generally normal mental status results, and minimal evidence of mental health treatment).)

Inconsistency with objective medical evidence is a clear and convincing reason to discredit claimant testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, *it is a factor that the ALJ can consider in his credibility analysis*.") (emphasis added). However, the ALJ cannot reject a claimant's testimony regarding the severity of their symptoms solely because the objective medical evidence does not support it. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work *solely* because the available objective medical evidence does not substantiate your statements.") (emphasis added); SSR 16-3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms *solely* because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.") (emphasis added). There must be other clear and convincing reasons for rejecting Plaintiff's symptom testimony.

### b)  Treatment

Plaintiff argues the ALJ failed to provide specific, clear, and convincing reasons for his credibility determination. (ECF 19 at 9 (citing *Lambert*, 980 F.3d at 1277).) Plaintiff argues the ALJ did not offer a legally sufficient rationale for not crediting Plaintiff's testimony regarding the severity of his symptoms. (*Id.*) Specifically, Plaintiff claims that epidural injections and use of narcotic medication are not signs of conservative care. (*Id*. at 12.) Further, Plaintiff argues that the ALJ mischaracterized the record in that the records cited by the ALJ state that Plaintiff only received moderate relief with limitations and had continued pain. (*Id.* at 11-13.)

Defendant first argues that the type of and effectiveness of Plaintiff's treatment is itself a factor, separate and apart from the objective medical evidence. (*Id.* at 23.)

1   Defendant then argues the ALJ reasonably found Plaintiff's treatment history and reports
2   of improvement inconsistent with Plaintiff's allegations that he was completely disabled
3   from pain. (*Id.* at 23-24.) Defendant explains that the ALJ was not required to find
4   Plaintiff received complete symptom relief from these treatments, but rather
5   appropriately found the improvement and stability of symptoms inconsistent with the
6   severity of symptoms alleged by Plaintiff. (*Id.* at 24.) Defendant also clarifies that the
7   ALJ did not find Plaintiff's epidural injections or medications were conservative
8   treatment. (*Id.* at 23.)

9        The ALJ considers whether and to what extent the claimant's subjective statements
10  are consistent with "other evidence" in the record. 20 C.F.R. § 404.1529(c)(3). This other
11  evidence may include the claimant's daily activities, medications, other measures used to
12  alleviate symptoms, and any "other factors" that the ALJ deems relevant. 20 C.F.R.
13  § 404.1529(c)(3)(i)-(vii); SSR 16-3p, 2017 WL 5180304, at *7-8. As an additional factor,
14  the ALJ can consider that Plaintiff's treatment history was inconsistent with his alleged
15  symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (relevant factors include the type and
16  effectiveness of medication or other treatment); SSR 16-3p, 2017 WL 5180304, at *9-10.

17       The Court agrees that the ALJ did not make a finding that Plaintiff's epidural
18  injections and medications were conservative treatment. However, as noted above, the
19  ALJ did find Plaintiff's symptoms were controlled and stable with treatment and
20  discussed his treatment. (AR 77.) As regards epidural injections, the ALJ found that on
21  March 27, 2017, Plaintiff reported improvement following a steroidal injection. (AR 77
22  (citing AR 479 [Ex. 2F at 147].) The cited portion of the record indicates that Plaintiff
23  felt moderate relief from the injection and reported some improvement of pain symptoms
24  with injections, rest, and medications. (AR 479.) Plaintiff also testified at his hearing
25  before the ALJ that epidurals and medication helped with pain. (AR 24 ("Well, I had a lot
26  of epidurals and medication and stuff like that so it kind of, you know help[ed] with
27  pain."); 25 (Indicating injections "helped for a couple of months")).) While this evidence
28  might be interpreted differently, where "the evidence is susceptible to more than one

11

rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)). The ALJ did not err in finding Plaintiff's improved with the epidural injections or in finding it undermined his testimony regarding the severity of his pain. Improvement following epidural injections may constitute a specific, clear and convincing reason. *See Stewart v. Colvin*, 674 F. App'x 634, 636 (9th Cir. Jan. 3, 2017).

The ALJ also found that Plaintiff showed continued improvement with medication. (AR 77 (citing AR 233, 273, 295, 307 [Ex. 1F 9, 49, 71, 83]).) The records cited by the ALJ support this finding. Plaintiff reported some improvement with medications in numerous medical records from May 2016 to March 2017. (*See* AR 233, 273, 307, 479.) The ALJ relied on an inconsistency between the severity of symptoms claimed by Plaintiff and Plaintiff's reports of some improvement from medications over time. The ALJ may consider inconsistencies between a plaintiff's testimony and reports to medical providers in rejecting a plaintiff's testimony. *See Connett*, 340 F.3d at 873 (finding ALJ's reliance on inconsistencies between a plaintiff's testimony and reports to medical providers supported rejection of the plaintiff's testimony); *see also Light*, 119 F.3d at 792 (ALJ may rely on "inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work records, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which he complains.").

Plaintiff argues "[e]pidural, chiropractic care and acupuncture provided none or only some relief." (ECF 19 at 13 (citing AR 562).) However, the ALJ finds that on November 6, 2018, Plaintiff reported improvement with chiropractic care and physical therapy. (AR 77-78.) The decision also cites exhibits in support thereof. (AR 78 (citing AR 502, 562 [Exs. 4F at 14; 6F at 1]).) The first exhibit cited by the ALJ, from March 14, 2018, notes Plaintiff reported having previously received chiropractic care following a car accident, and treating pain with an inversion table and a TENS machine which helped his pain. (AR 502.) The second exhibit the ALJ cites is a progress note from a November

6, 2018 visit with Dr. Gupta. (AR 562.) Plaintiff indicated at that visit that the lower back pain started after his March 2016 vehicular accident. (*Id.*) As regards his lower back pain, he stated that chiropractic care and physical therapy gave him some relief from pain. (*Id.*) He also stated that epidural injections helped with pain. (*Id.*)

The Court concludes that the ALJ did not mischaracterize Plaintiff's statements regarding his improvement with treatment. Plaintiff's statements to his medical providers, cited by the ALJ, indicated improvement through use of medication, epidural injections, chiropractic care and physical therapy. This analysis provides a clear and convincing reason supported by substantial evidence to discredit Plaintiff's testimony regarding the severity of his symptoms.

### c)   Daily Activities

The ALJ decision states, "claimant returned to work briefly in February 2018. (Ex. 3F, at pg. 2). He testified that he continued to work part-time at an autobody shop and as a handyman. This detracts from the claimant's alleged loss of functioning." (AR 78.) The ALJ goes on to find,

> The consistency of the claimant's allegations regarding the severity of his symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record. For instance, the claimant testified he cannot work due to back pain. However, he reported being independent in most activities of daily living and had normal insight and judgment (Exh. 5F, at pgs. 4-5). He also currently works part-time. This is inconsistent with the inability to work. Moreover, there is minimal evidence of mental health treatment in the medical record and no history of psychiatric hospitalizations. This is inconsistent with disabling mental impairments.

(AR 78.)

Plaintiff argues that the fact that Plaintiff can do part-time work is not enough reason to find a lack of credibility. (ECF 19 at 14-15.) He points to his testimony wherein he stated that he works odd jobs only 2-4 hours a day before pain stops him. (ECF 19 at 14 (citing AR 20-21).) There are days, about twice a week, where he cannot perform this work due to pain and depression. (*Id.* (citing AR 31-32).) He concludes that he cannot do

gainful work activity a substantial part of the day due to his pain. (*Id.* at 14-15.)
Defendant argues that the ALJ's finding was reasonable as the parttime work was
physically demanding and required mental aptitude beyond what Plaintiff alleged. (*Id.* at
25.) Defendant also argues a claimant's activities need not demonstrate an ability to
perform full-time, substantial work to be a relevant consideration. (*Id.*)

An "ALJ [is] permitted to consider daily living activities in his credibility
analysis." *Burch*, 400 F.3d at 681; *see also Molina v. Astrue*, 674 F.3d 1104, 1113 (9th
Cir. 2012) *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Daily activities
"form the basis for an adverse credibility determination" when: (1) the daily activities
meet the threshold for transferable work skills or (2) the daily activities contradict the
claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also*
*Trevizo*, 871 F.3d at 682. The ALJ's analysis here supports neither.

The ALJ stated that "the claimant testified he cannot work due to back pain.
However, he reported being independent in most activities of daily living …."(AR 78
(citing AR 559-60 [Ex. 5F at 4-5]).) The ALJ does not identify what daily activities
discredit Plaintiff's testimony that he cannot work due to back pain. Although the record
cited by the ALJ identifies some very basic activities, including chores, errands, and
reading, the ALJ does not explain how these activities are inconsistent with Plaintiff's
testimony. This is particularly problematic here because Plaintiff testified that typical
daily activities like getting dressed and showering were difficult for him depending on his
activities the prior day. (AR 27-28.) Also, when asked about helping his parents, who he
lives with, he indicated yes, "at times, but at times I'm usually just putting heat on my
back or the TENS unit." (AR 28.)

The ALJ also made an adverse credibility determination based on his finding that
Plaintiff testified that he works parttime at an autobody shop and as a handyman. (AR
78.) The decision concludes this detracts from his claim of alleged loss of functioning.
(AR at 78.) However, the ALJ's characterization of Plaintiff's testimony is not accurate.
Plaintiff testified that he did automotive work for family and friends a couple of hours a

14

day until the pain comes back. (AR 21, 31.) He also indicated there are many days, twice a week or so that he cannot work due to back pain or depression. (AR 31-32.) He does not own an autobody shop or work at one; he does the work at home. (AR 21.) He specifically answered "no" to the ALJ's question of whether he was associated with an autobody shop where he goes to work for them. (AR 21.) The ALJ not only ignored his testimony regarding how much he could work and where he worked, but characterized it inaccurately to discredited Plaintiff's allegations.

The Court finds that the ALJ's reliance on Plaintiff working parttime at an autobody shop to find his testimony not credible was erroneous. The ALJ's misstatement of Plaintiff's testimony gives the impression that Plaintiff goes to a job under a set work schedule for an employer. However, his doing odd jobs for family and friends when he is not in too much pain is not equivalent to Plaintiff holding a stable parttime job at an autobody shop.

The ALJ may consider the "inconsistencies either in his testimony or between his testimony and his conduct concerning the nature, severity and effect of the symptoms of which he complains." *Light*, 119 F.3d at 792. However, an ALJ errs if they mischaracterize a claimant's testimony to find inconsistency with daily activities. *See Garrison*, 759 F.3d at 1015-16; *see also Reddick*, 157 F.3d at 722 ("Our examination of the record shows that the ALJ has erred in characterizing statements and documents contained therein to reach the conclusion that Claimant exaggerated her symptoms."); *see also Cobb v. Colvin*, No. CV 14-0655 RNB, 2014 WL 5659414, at *2 (C.D. Cal. Nov. 4, 2014) (Finding ALJ's reasoning legally insufficient when ALJ "ignored the full context of plaintiff's statements about his daily activities, which indicated that he performed them on a limited basis with help and rest.") (citation omitted). Plaintiff's statements about his activities, considered in their full context, do not establish that he exaggerated his symptoms.

The ALJ also relied on Plaintiff's returning to work briefly in February 2018 to discredit Plaintiff's testimony. (AR 78 (citing AR 483 [Ex. 3F at 2]).) However, the

exhibit cited indicates that Plaintiff tried to return to work in February 2018 but after 3 days trying to work as a mechanic lifting tires, it hurt too much. (AR 483.) The ALJ fails to acknowledge this rather significant limitation of Plaintiff's attempt to return to work. The ALJ failed to report and consider the full context of Plaintiff's brief return to work. This was error. *See Reddick*, 157 F.3d at 723 (finding ALJ erred in characterization of statements by not fully accounting for the context of materials or all parts of the testimony and reports and paraphrasing of record material inaccurately.)

It does not appear from the decision that the ALJ found any of Plaintiff's daily activities transferrable to a work setting. As noted above, daily activities may be "grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn,* 495 F.3d at 639 (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("[T]here is no indication here that the limited activities Ghanim engaged in, often with the help of a friend, either comprised a 'substantial' portion of Ghanim's day, or were 'transferrable' to a work environment."). The "ALJ must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn* at 639 (quoting *Burch*, 400 F.3d at 681). There is no specific explanation regarding transferability. Additionally, even if the ALJ did address transferability, the analysis would necessarily rely on the same mischaracterization of Plaintiff's testimony as to when, where, and how much he could work. These deficiencies, discussed at length above, would result in the same error here.

In conclusion, the ALJ failed to identify what daily activities Plaintiff engaged in that undermined or were inconsistent with Plaintiff's testimony. The ALJ also erred in mischaracterizing the testimony he did identify as to Plaintiff's work activities and completely ignoring significant limitations on it. And, to the extent the ALJ was

attempting to find Plaintiff's daily activities were transferrable to a work setting, he failed to do so.

### 4.    Harmless Error and Remand

When, as here, the ALJ has erred, the Court must consider whether the error was harmless. "ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (An ALJ's reliance on erroneous reasons is harmless so long as the "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence"). However, "where the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless." *Marsh*, 792 F.3d at 1173.

Here, the ALJ provided two reasons for rejecting Plaintiff's testimony that were not erroneous – inconsistency with the objective medical evidence (*see* IV.A.2.a) and Plaintiff's treatment history (*see* IV.A.2.b). As noted above, the objective medical evidence is insufficient on its own to reject Plaintiff's symptom testimony. And, as discussed above, the ALJ's characterization of Plaintiff's testimony regarding his work activities was inaccurate and the typical daily activities the ALJ only referenced generally were not discussed. This leaves the Court with the impression that the ALJ did not understand Plaintiff's testimony regarding his activities. Even though the ALJ did not err in his interpretation of Plaintiff's improvement with treatment, the Court finds the ALJ's assessment of Plaintiff's symptom testimony overall might be different if the ALJ had an accurate understanding of Plaintiff's testimony regarding his activities. In this respect, the Court cannot find the ALJ's errors "inconsequential to the ultimate nondisability determination." *Marsh*, 792 F.3d at 1173. Additionally, the ALJ's errors in mischaracterizing Plaintiff's testimony were significant. *Id.* ("[W]here the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also

be heightened before an error can be determined to be harmless.") The Court cannot find the ALJ's errors here were harmless.

However, given the outstanding issues, the Court find's remand of the case is required. "The rare circumstances that result in a direct award of benefits are not present in this case." *Leon*, 880 F.3d at 1047. "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Id.* at 1045 (citing *Treichler*, 775 F.3d at 1099). The credit-as-true analysis "permits, but does not require, a direct award of benefits on review but only where the [ALJ] has not provided sufficient reasoning for rejecting testimony and there are no outstanding issues on which further proceedings in the administrative court would be useful." *Id.* at 1044.

The Court need not address each step of the three-part analysis because here there are "outstanding issues on which further proceedings in the administrative court would be useful." *Id.* At the second step, the Court considers "whether there are 'outstanding issues that must be resolved before a disability determination can be made' and whether further administrative proceedings would be useful.'" *Id.* (quoting *Treichler*, 775 F.3d at 1101). "In evaluating this issue, [the Court] consider[s] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Treichler*, 775 F.3d at 1104–05. "Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* at 1105. As discussed above, the ALJ erred in evaluating Plaintiff's subjective testimony, particularly in mischaracterizing Plaintiff's testimony regarding his activities to discredit his allegations regarding pain. The ALJ's erroneous findings are inadequate but further administrative review may remedy the ALJ's errors, making remand appropriate in this case.

**B.      Unconstitutional Administrative Process**

The second issue raised in the parties' briefing is whether the final decision arises from an unconstitutional administrative process that requires remand for a new hearing. The Court need not reach this issue because the only remedy sought, remand, is already being ordered for the reasons set forth above. However, the Court briefly addresses the issue below and finds Plaintiff would not be entitled to a new hearing based on the administrative process.

Plaintiff argues the case must be remanded for a new hearing because the final decision of the Commissioner arose from an unconstitutional administrative process. (ECF 19 at 26-39.) More specifically, Plaintiff argues that the improper appointment of the ALJ under tainted administrative proceedings mandates remand of the case for a new hearing. (*Id.* at 26 ("The question before this Court is whether the improper appointment of the ALJ tainted administrative proceedings below and mandates remand?") Plaintiff argues there is a two-layer removal problem because neither the Commissioner of Social Security nor the appointed ALJ, operating under the Commission, were subject to removal by the President at the time of Plaintiff's proceedings before the agency. (ECF 19 at 31-39.) Among other decisions, Plaintiff relies on *Collins v. Yellen*, 141 S. Ct. 1761 (2021), *Seila Law LLC v CFPB*, 140 S. Ct. 2183 (2020), *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), and an Office of Legal Counsel opinion, *Constitutionality of the Commissioner of Social Security's Tenure Protection*. 45 Op. O.L.C. (July 8, 2021), 2021 WL 2981542 (O.L.C.).

Defendant does not dispute the separation of powers violation as to limits on the President's authority to remove the Commissioner of Social Security. (ECF 19 at 39.) However, as to Plaintiff's argument regarding ALJ's, Defendant argues first that it does not apply because the final decision here was issued by the Appeals Council. (*Id.* at 40.) Then, Defendant explains that even if the final decision had been issued by an ALJ, there is no constitutional issue with the appointment of ALJs. (*Id.* at 40-43.) Additionally, Defendant argues that even if the Court found there was an issue with the appointment of

1   ALJs, Plaintiff is not entitled to a rehearing of his claim because "Plaintiff cannot show

2   that one or more improper removal restrictions 'inflicted compensable harm' on him."

3   (*Id.* at 43 (quoting *Collins*, 141 S. Ct. at 1787).)

4       The Court agrees that Plaintiff has not shown that an unconstitutional provision

5   actually caused him harm as would be required for a new hearing. The Ninth Circuit

6   addressed the unconstitutional provision regarding removal of the Commissioner of

7   Social Security in an opinion issued on April 27, 2022, after briefing on this case was

8   complete.[8] *Kaufman v. Kijakazi*, 32 F.4th 843 (9th Cir. 2022). While the court found the

9   removal provision "violates separation of powers principles," it also found it severable

10  and that a "[c]laimant . . . must demonstrate that the unconstitutional provision actually

11  caused her harm." *Id.* at 849 ("[U]nless a claimant demonstrates actual harm, the

12  unconstitutional provision has no effect on the claimant's case."). Even if the Court

13  assumed there were a similar violation in the appointment of ALJs and assumed that the

14  violation was at issue here, Plaintiff would not be entitled to a new hearing on that basis

15  because he has not demonstrated he was harmed by the unconstitutional provision.

16      Plaintiff relies only on the Commissioner and ALJ serving under unconstitutional

17  removal provisions at the time decisions were made regarding his claim for disability.

18  There is no basis for finding actual harm to Plaintiff from the unconstitutionality of the

19  Commissioner's removal provision or the alleged unconstitutionality of the ALJ's

20  removal provision. When, as here, "[n]othing in the record suggests any link whatsoever

21  between the removal provision[s] and the claimant's case," the removal provision does

22  not impact the validity of the final decision. *Kaufmann*, 32 F.4th at 850. Plaintiff is not

23  entitled to remand of the case on this basis.

24  ///

25  ///

26  

27  ———————————————

28  [8] The parties have not requested to file supplemental briefing regarding the *Kaufman* decision, and the Court finds it unnecessary in the absence of any request by the parties.

## V.    CONCLUSION

For the foregoing reasons, the Court grants summary judgment to Plaintiff, denies summary judgment to Defendant, and **REMANDS** the case to the Commissioner of Social Security for further administrative proceedings. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  August 18, 2022

Hon. Bernard G. Skomal
United States Magistrate Judge

21

20-cv-2014-BGS